# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 4:20-cr-172-ALM-BD-1 |
| | § | |
| ADEDAYO HAKEEM SANUSI | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's *Pro Se* Motion to Reduce Sentence (the "Motion") (Dkt. #73). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

On July 31, 2019, Defendant Adedayo Hakeem Sanusi ("Defendant") was indicted (the "Indictment") for the following: (1) Possession of Fifteen or More Access Devices, in violation of 18 U.S.C. § 1029(a)(3) ("Count One"); (2) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A ("Count Two"); and (3) Illegal Possession of Device-Making Equipment, in violation of 18 U.S.C. § 1029(a)(4) ("Count Three") (Dkt. #1).

On April 15, 2021, Defendant appeared before Magistrate Judge Kimberly C. Priest Johnson for a Change of Plea Hearing (Dkt. #25). Defendant entered a guilty plea to Count One, Count Two, and Count Three of the Indictment (Dkt. #25). The basis of these offenses consists of the following events: Defendant was involved in a fraudulent scheme, where Defendant portrayed himself to be several different individuals to obtain money from victims, including friends of the victims, family members of the victims, an attorney, and even the victims themselves (Dkt. #34 at p. 4). Defendant utilized internet platforms such as Facebook.com and Zoosk.com to communicate

with the victims (Dkt. #34 at p. 4). On July 31, 2019, a search warrant was executed at Defendant's apartment (Dkt. #27 at p. 1). Found at the premises were 51 credit cards displaying other people's names, an electronic credit card reprogramming device, a credit card manual embosser, a fraudulent driver license, 100 blank credit cards, and several wire transfer documents displaying Defendant's name (Dkt. #34 at p. 5). Between 2017 and 2019, Defendant fraudulently obtained money from at least three victims by pretending to be family members, close friends, an attorney, and additional individuals (Dkt. #34 at pp. 5–7).

On April 16, 2021, Magistrate Judge Priest Johnson entered her Findings of Fact and Recommendation on the Guilty Plea of Defendant (Dkt. #28). On May 3, 2021, the Court adopted Magistrate Judge Priest Johnson's report, thereby accepting Defendant's guilty plea (Dkt. #29). On November 10, 2021, Defendant was sentenced to 60 months on Counts One and Three, which shall run concurrently with one another, and 24 months imprisonment on Count Two to be served consecutively to Counts One and Three (Dkt. #37).[1]

On August 7, 2025, Defendant filed the instant Motion arguing primarily that the Court may reduce his sentence when the sentencing guideline range has been subsequently lowered by amendments (Dkt. #73).[2] The Government did not respond to Defendant's Motion. The Court

---

[1] Defendant appealed his sentence arguing the Court erred in applying an enhancement pursuant to U.S.S.G. § 2B1.1(b)(10)(C) on the basis that his offense conduct involved sophisticated means. *See United States v. Sanusi*, No. 21-40864, 2023 WL 2808966 (5th Cir. Apr. 5, 2023). The Fifth Circuit affirmed the Court's judgment. *Id*. at *2.

[2] Defendant has previously filed motions to reduce sentence (Dkt. #53; Dkt. #66), which the Court denied (Dkt. #55; Dkt. #67). Within Defendant's second Motion for Sentence Reduction and Compassionate Release Pursuant to 18 U.S.C. § 3582(c) (Dkt. #66), filed on February 25, 2025, Defendant request relief based on the following: (1) demonstrated rehabilitation; (2) family hardship; and (3) health concerns. The United States Probation Office noted its opposition to this request for compassionate release in a letter sent to the Court on March 24, 2025 (the "Probation Office Letter"). Although some of the issues raised in the previous Motion for Compassionate Release are not raised in the instant Motion (Dkt. #73), the Court will nonetheless consider Defendants' previously raised grounds for compassionate release (Dkt. #66) and the Probation Office Letter.

considered all of Defendant's arguments. *See United States v. Mitchell*, No. 4:04-CR-106-31, 2023 WL 3075941, at *4 (E.D. Tex. Apr. 25, 2023) (noting that courts construe *pro se* motions liberally).

## LEGAL STANDARD

I.  **18 U.S.C. § 3582(c)(1)(A)**

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

3

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[3]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the [Bureau of Prisons]" *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the

---

[3] This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II. Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)).[4] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory . . . we must enforce this procedural rule."). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a

---

[4] The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (citation modified); *see also Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (citation modified) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

### III.  U.S.S.G.'s Policy Statement

#### A.  Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. §§ 1B1.13(b)(1)(A)–(D).

First, whether the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient.

6

*See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F. Supp. 3d 285, 291–92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "managed effectively by medication and do not substantially diminish the ability of the defendant to provide self-care," the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F. App'x 986, 987 (5th Cir. 2021) (citation modified).

Third, whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of

7

serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[5] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons*,

---

[5] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

8

455 F. Supp. 3d at 290 ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and domestic health authorities, including the World Health Organization,[6] the United States Centers for Disease Control and Prevention,[7] and the U.S. Federal Government,[8] have made clear that the COVID-19 pandemic has ended.[9] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

### B. Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental

---

[6] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[7] End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[8] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[9] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

9

health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

### C. Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*,

10

No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F. Supp. 3d 233, 237–38 (E.D.N.Y. 2023) ("[w]ithout medical evidence [of the] father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Id.* The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez,* No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019)).

### D.  Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G. §§ 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an

11

administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E. Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. §§ 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F. Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2025) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

## II. The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect

12

the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

### III. The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the

13

requirements of § 3582(c)(1)(A)(ii);[10] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022)).

## ANALYSIS

Defendant moves for compassionate release based on "extraordinary and compelling reasons" and argues his demonstrated rehabilitation, family hardship, health concerns, and improperly applied First Step Act time credit as compelling reasons for the Court to grant his petition (Dkt. #66 at p. 1). Additionally, Defendant is claiming retroactive amendments to the sentencing guidelines should reduce his criminal history category and offense level, warranting a lower sentencing range (Dkt. #73 at p. 1). Defendant argues that continued incarceration is neither necessary nor just under the circumstances (Dkt. #66 at p. 1).

### I.  The Exhaustion Requirement

As a threshold matter, the Court first addresses the exhaustion requirement. As outlined in § 3582(c)(1)(A), "before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Wilson*, 2024 WL 4267923, at *4 (citing U.S.C. § 3582(c)(1)(A)).

---

[10] 18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

Here, the Defendant has not exhausted his administrative remedies. Documentation provided by the Bureau of Prisons indicates Defendant Sanusi has not requested release through Warden. Despite this, the Court acknowledges the Government did not file a Response to Defendant's Motion, and per the Fifth Circuit, the Court may not raise Defendant's failure to exhaust administrative remedies *sua sponte*. *McLean*, 2022 WL 44618, at *1 (finding abuse of discretion where the defendant's failure to exhaust administrative remedies was raised *sua sponte*); *see also Ward*, 11 F.4th at 361. Thus, the exhaustion requirement does not bar Defendant's Motion.

## II.   The "extraordinary and compelling" Requirement

To show that "extraordinary and compelling" reasons warrant a sentence reduction, the Court examines whether the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13.

### A.   Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1)

Unless otherwise indicated, the following factual background in the remaining analysis are derived from the March 24, 2025 Probation Office Letter. Defendant is a 46-year-old male and has served approximately 62% of his statutory term, at the time the Probation Office Letter was sent to the Court. Defendant did not provide any medical documentation with his motion (Dkt. #66; Dkt. #73), as he is not claiming any specific medical condition that would provide reason for his reduction in sentence. Defendant has no medical restrictions to date and is cleared for regular duty and food service. Defendant is classified as Care Level 1 "healthy or simple chronic care." Care Level 1 inmates are inmates that are less than 70 years of age and are generally healthy.

### B.   Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

Defendant claims that his incarceration is causing his family to experience severe financial strain and emotional instability.  In most cases, individuals sentenced to a term of imprisonment, who have a spouse and children, will cause their family to be affected in some way both emotionally

15

and financially. Without more, the Court cannot determine Defendant's family circumstances warrant the relief he seeks.

* * *

Defendant has not demonstrated any extraordinary or compelling reasons that would justify a reduction in his sentence. The Court is satisfied that the Bureau of Prisons continues to effectively evaluate and screen inmates for potential placement on home confinement when deemed appropriate. While Defendant made commendable efforts toward self-improvement and rehabilitation during his incarceration, such progress aligns with the fundamental purpose of imprisonment — to prepare individuals for successful reintegration into society and to reduce the likelihood of reoffending upon release. Further, with respect to pre-release planning and potential employment if the Motion were granted, Defendant has not provided a specific release plan or identified any prospective employment opportunities.

### III.     The 3553(a) Factors

Even if there were "extraordinary and compelling" reasons at hand, the sentencing factors under 18 U.S.C. § 3553(a) weigh against his release. The sentencing factors under 18 U.S.C. § 3553(a) weigh against Defendant's release. Under these factors, the Court may address the nature and circumstances of Defendant's offense and criminal history, the need to protect the public, and the importance of promoting respect for the law. *United States v. Bravo-Ziranda*, No. 3:18-CR-00415-K-1, 2023 WL 4494348, at *5 (N.D. Tex. July 10, 2023).

Here, Defendant entered a plea of guilty, which the Court accepted, as to Counts One, Two, and Three of the Indictment: (1) Possession of Fifteen or More Access Devices, in violation of 18 U.S.C. § 1029(a)(3); (2) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A; and (3) Illegal Possession of Device-Making Equipment, in violation of 18 U.S.C. § 1029(a)(4) (Dkt.

16

#29). Defendant pleaded guilty to generating false identification documents, assuming people's identities, producing unauthorized and counterfeit credit cards, and using these credit causes to conduct fraudulent transactions (Dkt. #34 at p. 4). Additionally, Defendant pleaded guilty to utilizing internet platforms to talk to victims, impersonating various people, and obtaining money and access to accounts (Dkt. #34 at p. 4). He pleaded guilty to using these victims' identities to open accounts and obtain credit cards, acquire loans, and attempt to buy property (Dkt. #34 at pp. 4–7). The Court found this overall scheme implemented sophisticated means to carry out (Dkt. #36).

The nature of circumstances of the offense are serious. "[F]inancial and pecuniary crimes do endanger the public." *United States v. Grant*, No. CR 16-00172-01, 2023 WL 2993009, at *4 (W.D. La. Apr. 18, 2023). Granting Defendant's Motion would not serve the § 3553(a) factors because his release would not adequately reflect the serious nature and circumstances of the offense. *See* 18 U.S.C. § 3553(a). Further, his release would undermine the need for the sentence imposed to reflect the seriousness of the offense and would not promote respect for the law. *See Wedgeworth*, 2024 WL 4988370, at *10. The Court also has an obligation to protect the public from further crimes by Defendant and deter future criminal conduct. *See id.* Granting Defendant's Motion would undermine these aims. First, keeping Defendant in custody protects society from the possibility that he will reoffend. Second, other individuals may become emboldened to engage in similar conduct if lengthy sentences can routinely be reduced by granting motions for compassionate release. Thus, after considering the factors in 18 U.S.C. 3553(a), the Court concludes that the factors weigh against granting Defendant's Motion.

Accordingly, the Defendant has not carried his burden when seeking compassionate release.

## CONCLUSION

It is therefore **ORDERED** that Defendant's *Pro Se* Motion to Reduce Sentence (Dkt. #73) is hereby **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 8th day of January, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE